## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE NON-PARTY<br>DEPOSITION SUBPOENA<br><br>GERALD P. KONKEL<br>MORGAN, LEWIS & BOCKIUS LLP<br>1111 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br><br>Movant. | Case: 1:14-mc-00258<br>Assigned To : Hogan, Thomas F.<br>Assign. Date : 3/10/2014<br>Description: Miscellaneous |
| UTICA MUTUAL INSURANCE CO.,<br>1800 Genesee Street<br>New Hartford, New York 13413<br><br>Plaintiff.<br>v.<br><br>FIREMAN'S FUND INSURANCE CO.,<br>777 San Marin Drive<br>Novato, California 94945<br><br>Defendant. | Civil Action No. 6:09-cv-0853 (DNH/TWD)<br>(N.D.N.Y.) |

## MOTION TO QUASH THE SUBPOENA TO GERALD P. KONKEL

Pursuant to Federal Rule of Civil Procedure 45(d)(3), non-party Gerald P. Konkel,

through counsel, submits this Motion to Quash the Subpoena served on him on February 25,

2014. This Court should quash the subpoena from Fireman's Fund Insurance Company

("Fireman's Fund"), which targets an attorney's documents and testimony regarding an active

lawsuit, for several reasons: (1) it seeks information that is protected by the attorney-client

privilege; (2) it seeks information concerning Mr. Konkel's mental impressions that are protected

by the attorney work product doctrine; (3) it seeks information that is absolutely protected by the

California mediation privilege; (4) it is overbroad and, consequently, imposes an undue burden

on Mr. Konkel because it seeks information regarding ongoing litigation in which Mr. Konkel continues to represent his client, Goulds Pump Inc. ("Goulds"); (5) it targets information far beyond the limited discovery permitted in the case; and (6) it causes undue burden because a paralegal working on the case for Fireman's Fund's law firm previously worked for Goulds and with Mr. Konkel on the subject matter of the subpoena.

In the alternative, Mr. Konkel requests that this Court modify the subpoena to permit only deposition questioning that is not protected by the attorney-client privilege, the work product protection, or the absolute mediation privilege *and* that relates to the 1966 through 1973 policy years.

Finally, Mr. Konkel seeks the disqualification of Fireman's Fund's counsel from representing Fireman's Fund in any matter relating to the enforcement of the subpoena because Fireman's Fund's counsel has violated its ethical obligations and created a significant conflict by employing a paralegal who previously worked for Goulds and with Mr. Konkel on the subject matter of the subpoena.

Pursuant to Local Civil Rule 7(m), counsel for Mr. Konkel conferred with counsel for Fireman's Fund in a good faith effort to resolve this Motion, but the parties could not reach a resolution and Fireman's Fund opposes this Motion.

Dated: March 10, 2014                    Respectfully submitted,

_____

Daniel E. Chefitz (D.C. Bar No. 481420)
Jessica M. Zetwick (D.C. Bar. No. 989187)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 739-5760
Facsimile: (202) 739-3001
Email: dchefitz@morganlewis.com
        jzetwick@morganlewis.com

*Counsel for Non-Party Movant Gerald P. Konkel*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2014, the Motion to Quash the Subpoena

to Gerald P. Konkel was filed with the Clerk of Court and a copy was served by hand delivery,

on:

> John B. Williams, Esquire
> Williams Lopatto PLLC
> 1776 K Street, NW, Suite 800
> Washington, DC  20006
> *Attorney for Fireman's Fund Insurance Company*
>
> Syed S. Ahmad, Esquire
> Hunton & Williams LLP
> 1751 Pinnacle Drive, Suite 1700
> McLean, VA  22102
> *Attorney for Utica Mutual Insurance Company*

Jessica M. Zetwick, D.C. Bar No. 989187

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE NON-PARTY DEPOSITION SUBPOENA | Civil Action No. _____ |
| GERALD P. KONKEL MORGAN, LEWIS & BOCKIUS LLP 1111 Pennsylvania Avenue, N.W. Washington, D.C. 20004 | |
| Movant. | |
| UTICA MUTUAL INSURANCE CO., 1800 Genesee Street New Hartford, New York 13413 | |
| Plaintiff. v. | Civil Action No. 6:09-cv-0853 (DNH/TWD) (N.D.N.Y.) |
| FIREMAN'S FUND INSURANCE CO., 777 San Marin Drive Novato, California 94945 | |
| Defendant. | |

### MEMORANDUM IN SUPPORT OF MOTION TO QUASH
### THE SUBPOENA TO GERALD P. KONKEL

Pursuant to Federal Rule of Civil Procedure 45(d)(3), non-party Gerald P. Konkel submits this Memorandum in Support of Motion to Quash the Subpoena served on him on February 25, 2014.

### SUMMARY OF ARGUMENT

Fireman's Fund Insurance Company ("Fireman's Fund") is litigating a reinsurance dispute with its reinsured Utica Mutual Insurance Company ("Utica Mutual") over a settlement Utica Mutual reached with its insured Goulds Pumps, Inc. ("Goulds") after a lengthy mediation

and as part of a coverage dispute that Goulds continues to prosecute against one of Utica

Mutual's co-insurers.[1]  *See Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, No. 6:09-cv-0853

DNH/TWB (N.D.N.Y.).  Through the subpoena, Fireman's Fund seeks the testimony of one of

the Goulds' attorneys regarding his role in an active litigation in California as well as in a prior

mediation with Utica Mutual.  The subpoena requires testimony regarding the following matters:

> *Cannon Electric Inc., et al. v. Affiliated FM Insurance, et al.,* No.
> BC 290354 (Sup Ct Cal.) and *Utica Mutual Insurance Company v.
> Goulds Pumps Inc., et al.,* No. 2003-002721 (Sup. Ct. N.Y.)

Chefitz Decl., ¶ 3, Exh. 1 (Konkel Subpoena).  The category of documents requested by the

subpoena are just as broad and targeted to information protected by the attorney-client privilege,

work product doctrine and/or mediation privilege:

> All documents, including electronically stored information (e.g.,
> emails), correspondence, and all drafts of all documents,
> exchanged between Utica Mutual Insurance Company and Goulds
> Pumps, Inc. relating to the settlement(s) in the following actions:
> *Cannon Electric Inc., et al. v. Affiliated FM Insurance, et al.,* No.
> BC 290354 (Sup Ct Cal.) and *Utica Mutual Insurance Company v.
> Goulds Pumps Inc., et al.,* No. 2003-002721 (Sup. Ct. N.Y.)

*Id.*  Putting aside the overbroad nature of the subpoena, questioning an attorney about legal

positions taken in a lawsuit, especially one that remains pending, and a mediation, necessarily

targets information protected by privilege, whether attorney-client, work product and/or

mediation.  Moreover, the subpoena seeks testimony and documents far beyond the single issue

with respect to the Goulds-Utica settlement that the court overseeing the Utica Mutual-Fireman's

Fund dispute ruled was relevant to that case.  Finally, the subpoena is improper because a

paralegal who is a key member of the legal team prosecuting the subpoena previously worked for

several years for Morgan Lewis, under Mr. Konkel's supervision and on behalf of Goulds, on the

---

[1]  This California action, *Cannon Electric Inc., et al. v. Affiliated FM Ins., et al,* No. BC290354 (Sup.Ct. Cal.) also included Goulds's claims against Fireman's Fund in its capacity as a direct excess insurer of Goulds.  In January 2012, Goulds and Fireman's Fund settled their dispute through mediation.

2

very same litigation and settlement that is the subject of the subpoena. For these reasons, as more fully discussed in this memorandum, the subpoena should be quashed, and the law firm prosecuting the subpoena should be disqualified from further pursuing the subpoena due to a clear conflict of interest.

## RELEVANT FACTS

### I.  Goulds Litigation and Mediation with Utica Mutual.

In 2003, Utica Mutual and Goulds engaged in litigation regarding Utica Mutual's duty, under primary and umbrella insurance policies it issued to Goulds, to pay or reimburse Goulds for costs, fees, and expenses incurred with respect to the defense of lawsuits against it. That litigation consisted of two parallel cases in California and New York state court, styled *Cannon Electric Inc., et al. v. Affiliated FM Insurance, et al.*, No. BC 290354 (Sup. Ct. Cal.) and *Utica Mutual Insurance Company v. Goulds Pump, Inc., et al.*, No. 2003-002721 (Sup. Ct. N.Y.) respectively.

In 2004, Goulds and Utica Mutual began extensive mediated settlement discussions in California and New York regarding the litigation. Chefitz Decl., ¶ 4, Exh. 2 (April 27, 2007 Los Angeles Superior Court Order, ¶ 3). The mediation was presided over by the California and New York trial judges. *Id.* In and in connection with the mediation, as well as the litigation, Goulds was represented by the law firm Morgan, Lewis & Bockius LLP ("Morgan Lewis"), including Mr. Konkel and Ms. Kelli Hall, a senior paralegal. *See* Chefitz Decl., ¶¶ 5, 10.

During the lengthy mediation, Goulds and Utica Mutual exchanged many documents and engaged in extensive communications regarding their efforts to reach a settlement of the litigation. Goulds engaged in the mediation with Utica Mutual with the joint understanding that all documents and communications related to the mediation were protected by the State of

California's absolute mediation provision. *See* Chefitz Decl., ¶ 4, Exh. 2 (April 27, 2007 Los Angeles Superior Court Order, ¶¶ 3, 4, 9); *see also* Cal. Evid. Code § 1119(a) & (b). On or about February 20, 2007, the parties signed a confidential agreement and subsequently implemented the settlement pursuant to the mediation. *Id.*, ¶ 4, Exh. 2 (April 27, 2007 Order at ¶ 8). The California and New York courts entered an order regarding the settlement agreement which provided, *inter alia,* that the law governing confidentiality of mediation and settlement negotiations other than with respect to the order, "shall remain applicable to all other statements, negotiations, and documents relating to mediation or settlement as set forth in [Los Angeles Superior Court] rule 3.854 and other applicable law." *Id.*, ¶ 4, Exh. 2 (April 27, 2007 Order at ¶ 9).

Fireman's Fund was also a party to the California litigation, and Goulds resolved its disputes with Fireman's Fund pursuant to mediation. Mr. Konkel continues to represent Goulds in the litigation, which remains pending against another defendant that is a co-insurer of Utica Mutual and Fireman's Fund.

## II.   The Reinsurance Dispute Between Utica Mutual and Fireman's Fund.

In 2009, Utica Mutual and Fireman's Fund, also a reinsurer of Utica Mutual, became embroiled in litigation in the U.S. District Court for the Northern District of New York regarding Fireman's Fund's reinsurance obligations for umbrella (second-layer) insurance policies Utica Mutual issued to Goulds from 1966 through 1973 related to the underlying asbestos litigation in the lawsuit between Utica Mutual and Goulds. *See Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, No. 6:09-cv-0853 DNH/TWB (N.D.N.Y.). The policy years at issue in the Utica Mutual and Fireman's Fund reinsurance dispute are important because those are the only years that should be relevant for purposes of the subpoena served on Mr. Konkel. The vast majority of the

underlying dispute between Goulds and Utica Mutual focused on policies issued *after* 1973. As part of the discovery in their reinsurance dispute, Utica Mutual apparently produced documents and communications exchanged during its confidential mediation with Goulds (apparently under seal and pursuant to a protective order), in violation of the California state mediation privilege, despite the fact that Utica Mutual had protected that privilege in the underlying coverage action. *See* Chefitz Decl., ¶ 6. Goulds just became aware of this apparent violation in the course of meeting and conferring regarding the subpoena, and certainly never waived the privilege or consented to the production of mediation documents under seal or under a protective order or otherwise.[2]  Chefitz Decl., ¶ 6.

### III.     Fireman's Fund's Third Party Subpoena to Mr. Konkel (Goulds).

On February 25, 2014, Fireman's Fund served a third-party subpoena on Mr. Konkel, counsel for Goulds in the pending underlying coverage litigation, to obtain all information Mr. Konkel possesses regarding the litigation he continues to prosecute including all information regarding a mediation involving Utica Mutual. The subpoena states that Fireman's Fund seeks to question Mr. Konkel regarding the prior cases in New York and California state court between Utica Mutual and Goulds. *See* Chefitz Decl., ¶ 3, Exh. 1 (Konkel Subpoena). That same day, counsel for Mr. Konkel called Mr. Williams voicing his objections to the subpoena and followed with a letter on February 27, 2014, objecting to the subpoena because it seeks information and documents protected from disclosure by the California mediation privilege, the attorney-client privilege, and the work product doctrine, in addition to being overbroad. *See id.*, ¶ 7, Exh. 3 (Chefitz Letter). Counsel for Mr. Konkel expressed a willingness to work with Fireman's Fund

---

[2]      When counsel for Mr. Konkel asked Fireman's Fund counsel John Williams for all of the documents about which Fireman's Fund will seek Mr. Konkel's deposition testimony, Mr. Williams only sent two documents, though he mentioned that he plans to ask Mr. Konkel about many documents. *See* Chefitz Decl., ¶ 9.

to authenticate certain documents, to the extent that those documents were not subject to the

mediation privilege or other privilege. *Id.*. Fireman's Fund rejected this compromise, instead

demanding that both Mr. Konkel for Goulds and Utica Mutual stipulate to the absolute

admissibility for all purposes, waiving any objection, of several documents, most of which have

not to date been disclosed to Mr. Konkel. *See id.*, ¶¶ 8, 9, Exhs. 4 (Williams March 4, 2014

Email), 5 (March 4, 2014 Kitton Email and Attachment).  Fireman's Fund's counsel rejected

invitations to withdraw the overly broad and improper subpoena or to at least take the deposition

"off calendar." *See id.*, ¶ 8, Exh. 4 (Williams March 4, 2014 Email).

## IV.    The Judge Overseeing the Reinsurance Case Limited Discovery With Respect to the Goulds-Utica Settlement to a Single Issue under Certain Policies.

At Fireman's Fund's request in response to discovery Fireman's Fund was resisting from

Utica Mutual, the U.S. District Court for the North District of New York has limited discovery in

the instant reinsurance dispute with respect to the Goulds-Utica prior dispute and its resolution of

it to a single issue pertaining only to insurance policies issued from 1966 to 1973.  On

December 21, 2012, that court ruled that, "[i]n light of [Fireman's Fund's] representations, it

appears that [Fireman's Fund's] sole challenge to the Settlement Agreement [between Goulds

and Utica Mutual] is the agreement between Goulds and Utica on aggregate product limits in the

Utica primary policies [for the years 1966 through 1973]." *See* Dkt. No. 156, *Utica Mutual Ins.*

*Co. v. Fireman's Fund Ins. Co.*, Case No. 6:09-cv-00853-DNH-TWD (N.D.N.Y.) (noting that

counsel for Fireman's Fund made representations to the court that "all of [Fireman's Fund's]

affirmative defenses" related to "the issue of whether the Utica primary policies for the years

1966 through 1973 had aggregate product limits.")).  Necessarily, then, the only evidence

relevant to Fireman's Fund's affirmative defenses is whether the Utica primary policies for the

years 1966 through 1973 had aggregate product limits.

V.     **A Paralegal Assisting Fireman's Funds' Lawyers in Connection with this Subpoena against Mr. Konkel and Goulds Previously Worked as a Paralegal for Mr. Konkel and Goulds on the Same Matters that are the Subject of the Subpoena.**

After Fireman's Fund served the subpoena on Goulds' counsel Mr. Konkel, seeking

testimony and documents from Goulds, Mr. Konkel's attorney reached out to Mr. Williams and

demanded that Mr. Williams and his law firm withdraw from any involvement with the subpoena

because of a conflict of interest. *See* Chefitz Decl., ¶ 8, Exh. 4 (Williams March 4, 2014 Email).

That conflict of interest results from the fact that Ms. Hall, a paralegal working with Mr.

Williams on this case, previously worked from July 2006 until March 2013 as a senior paralegal

at Morgan Lewis, under Mr. Konkel's supervision on behalf of Goulds, on the very same

litigation and settlement that is the subject of the subpoena. *See* Chefitz Decl., ¶ 10.  While at

Morgan Lewis Ms. Hall billed at least 761 hours on the Goulds litigation. *Id.*  Mr. Williams and

his law firm refused to withdraw from pursuing the subpoena against Goulds, despite the clear

conflict of interest under District of Columbia Code of Professional Conduct: Rule 5.3

[Responsibilities Regarding Nonlawyer Assistants]. *See* Chefitz Decl., ¶ 8, Exh. 4 (Williams

March 4, 2014 Email).

## ARGUMENT

Federal Rule of Civil Procedure 45(d)(3) provides that "the court for the district where

compliance is required must quash or modify a subpoena that . . . requires disclosure of

privileged or other protected matter . . . [or] subjects a person to undue burden."  Here, this Court

has authority to quash the subpoena because the subpoena specifies that the deposition will take

place within the District of Columbia.  This Court should quash the subpoena, which targets an

attorney's documents and testimony regarding an active lawsuit, because it (1) seeks information

that is protected by the attorney-client privilege; (2) seeks information concerning Mr. Konkel's

mental impressions that are protected by the attorney work product doctrine; (3) seeks

7

information that is absolutely protected by the California mediation privilege; (4) is overbroad and, consequently, imposes an undue burden on Mr. Konkel because it seeks information regarding, without limitation, the New York and California state court cases between Utica Mutual and Goulds; (5) targets information far beyond the limited issue that Fireman's Fund successfully argued is relevant to its reinsurance dispute; and (6) causes undue burden because a paralegal working on this case for Fireman's Fund's law firm previously worked on behalf of Goulds and with Mr. Konkel on the subject matter of the subpoena.

As an initial matter, federal courts look negatively on the deposition of opposing counsel – or counsel in a former, related action – and urge that such a tactic should be used rarely. *E.g.*, *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380 (D.D.C. 2011). Deposing counsel, even when the deposition is limited to relevant and non-privileged information, which is not the case here, "may disrupt the effective operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients." *Id.* at 380-81. Moreover, "depositions of opposing counsel present a 'unique opportunity for harassment.'" *Id.* at 381 (quoting *Marco Island Partners v. Oak Dev. Corp.*, 117 F.R.D. 418, 420 (N.D. Ill. 1987)).

## I.     The Attorney-Client Privilege Protects From Disclosure Confidential Communications Between Goulds and its Attorneys.

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law" and "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege protects confidential communications made between a client and her

8

attorney in order to obtain or give legal assistance. *E.g., Id.; Fisher v. United States*, 425 U.S. 391, 403 (1976).

Because Goulds has not waived the attorney-client privilege with respect to communications between it and Morgan Lewis, confidential communications between the two for the purpose of giving or receiving legal advice remain protected from disclosure. *See In re: Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989) (noting that communications covered by the attorney-client privilege "must be jealously guarded by the holder of the privilege lest it be waived"). The subpoena issued to Mr. Konkel threatens to infringe on Gould's attorney-client privilege because it seeks testimony from Mr. Konkel – Gould's own attorney – regarding the entire pending lawsuit involving Goulds, Utica Mutual, and Fireman's Fund, as well as a second companion case that was litigated in New York. Deposition questioning of Gould's own lawyer about the two lawsuits and about "drafts" of documents which the subpoena *duces tecum* seeks will necessarily involve discussions regarding matters that are protected from disclosure by the attorney-client privilege.

## II.    The Work Product Doctrine Protects From Disclosure the Mental Impressions of Goulds Pump's Attorneys.

The work product doctrine protects from disclosure documents or other tangible or intangible things that were prepared in anticipation of litigation, by or for a party or by or for a party's representative. *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). *See also* Fed. R. Civ. P. 26(b)(3). A document is prepared "in anticipation of litigation" if "the document was prepared because of existing or expected litigation." *United States v. Adlman*, 134 F.3d 1194, 1198 (2d Cir. 1998) (internal quotations omitted). Additionally, the work product doctrine "unquestionably prohibits the exploration of the lawyer's thoughts, opinions and mental impressions even if they have not taken tactile form." *Chang v. United States*, Civil No. 02-2010

(EGS/JMF), 2012 WL 28257, at * 5 (D.D.C. Jan. 5, 2012). The work product protection may be overcome only when the party seeking disclosure demonstrates "substantial need" for discovery of the protected information. *Elkes v. B'nai B'rith Int'l*, Civil Action No. 80-3321, 1981 WL 2246, at *3 (D.D.C. Nov. 3, 1981) (granting motion to quash subpoena served on attorneys on the basis of attorney-client privilege and work product protection).

In *Chang*, the U.S. District Court for the District of Columbia granted a motion to quash a subpoena for the deposition testimony of the District of Columbia's former lead counsel in the case. *Id.* at *2. There, the court quashed the subpoena because the subpoena sought the former lead counsel's "rationale, justification, reasoning, and/or explanation for the nearly three month delay in [notifying the court and plaintiff of the deletion of certain discoverable data." *Id.* at *5. In quashing the subpoena, the court held that "[i]t is frankly impossible to ask [the former lead counsel] questions about her 'rationale, justification, reasoning and/or explanation' for her delay . . . without seeking her thoughts and mental impressions, in obvious violation of the work product privilege." *Id.*

Here, Fireman's Fund's counsel has declared its intent to question Mr. Konkel regarding documents drafted by Morgan Lewis in the course of its (and his) representation of Goulds in the New York and California litigations. Such information, about the litigation itself, certainly fits the bill of being prepare "in anticipation of litigation" and is protected by the work product doctrine. *See generally Adlman*, 134 F.3d at 1198. Moreover, if the deposition goes beyond Mr. Konkel merely reading into the record the contents of certain documents – which it most certainly will – such questioning would constitute an impermissible intrusion into Mr. Konkel's mental impressions regarding the mediation and the New York and California litigation in general. *See Chang*, 2012 WL 28257, at *5. Like the proposed questioning of the attorney in

*Chang*, if Fireman's Fund's counsel inquires into the rationale for certain statements made by Morgan Lewis attorneys in their correspondence the questioning will unavoidably "seek[] [Mr. Konkel's] thoughts and mental impressions, in obvious violation of the work product privilege." *Id.* Not only would discovery into internal thoughts and mental impressions of Goulds' lawyers impermissibly seek attorney work product, it would seek inherently non-relevant information as to whether *Utica's* settlement with Goulds was proper, not what Goulds or its lawyers thought about it or thought about the documents they exchanged with Utica. Fireman's Fund has demonstrated no "need," substantial or otherwise, to discover Goulds' work product.

**III.    The Absolute California Mediation Privilege Protects From Disclosure Any Documents or Communications Made During the Confidential Mediation Between Goulds Pump and Utica Mutual.**

California law recognizes a "clear and absolute" mediation privilege. *Cassel v. Superior Court*, 51 Cal. 4th 113, 117, 244 P.3d 1080, 1083, 119 Cal.Rptr.3d 437, 440 (Cal. 2011). *See also Benesch v. Green*, No. C-07-03784 EDL, 2009 WL 4885215, at *4 (N.D. Cal. Dec. 17, 2009) ("Where no express waiver of confidentiality exists, judicially crafted exceptions to mediation confidentiality are not appropriate."). That privilege is held by the parties to the mediation and the attorneys. *Cassel*, 51 Cal. 4th at 123. The California Supreme Court has held that discovery is "out of bounds" with respect to communications for the purpose of, in the course of, or pursuant to mediation between parties and their lawyers in the mediation. *Id.*; *see also* Cal. Evid. Code § 1119(a) & (b) (stating that statements or writings "made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation" are not admissible and are not subject to discovery ). The privilege is so broad that even a client-party that sues its attorney, alleging legal malpractice by that attorney in the course of the mediation, cannot compel discovery from that attorney or otherwise about the mediation. *Id.* (agreeing with attorneys' argument that "mediation-related discussions with [attorney's client] are inadmissible

in [the attorney's client's] malpractice action against them, even if those discussions occurred in private, away from any other mediation participant."). Additionally, the mediation privilege cannot be waived by a single party and cannot be waived without the waiver of the attorneys who participated in the mediation. *Id.* at 119 (stating that "unless the confidentiality of a particular communication is expressly waived, under statutory procedures, by all mediation participants," things said or written "for the purpose of" and "pursuant to" a mediation shall be inadmissible in any civil action); *see also* Cal. Evid. Code § 1122(a)(1) & (2).

The California Supreme Court has further stated that "[a]s the statute makes clear, confidentiality, unless so waived, extends beyond utterances or writings 'in the course of' mediation, and thus is not confined to communications that occur between mediation disputants during the mediation proceeding itself." *Cassel*, 51 Cal.4th at 119. The privilege extends to "all discussions conducted in preparation for a mediation, as well all mediation-related communications that take place during the mediation itself, are protected from disclosure." *Id.* at 128.

Moreover, federal courts have recognized the mediation privilege founded in state law. In *Benesch v. Green*, the U.S. District Court for the Northern District of California recognized California's mediation privilege, noting that the mediation privilege applied in that case and that "[c]ourts strictly apply the [privilege] even when doing so may lead to an inequitable result." 2009 WL 4885215, at *4 (applying mediation privilege to deny former client's attempt to introduce communications with the attorney who represented her during mediation). Similarly, the U.S. District Court for the Western District of New York, "as a matter of comity," accorded deference to New York state's similar mediation privilege and protected from disclosure mediation materials that were confidential under the state's mediation privilege. *Lolonga-*

*Gedeon v. Child & Family Svcs.*, No. 08-CV-00300A(F), 2012 WL 1714914, at *11-12 (W.D.N.Y. May 15, 2012).

The subpoena broadly seeks to question Mr. Konkel regarding the prior cases in New York and California state court between Goulds Pump and Utica Mutual, both of which were resolved in the California mediation. Chefitz Decl., ¶ 3, Exh. 1 (Konkel Subpoena). Those cases necessarily include the mediation and resulting settlement between Goulds and Utica Mutual. Neither Goulds nor Mr. Konkel, however, have waived the mediation privilege with respect to the California mediation between Goulds and Utica Mutual. *See* Chefitz Decl., ¶ 6.[3]   Utica Mutual's apparent production in discovery of mediation-related documents and communications to Fireman's Fund does not constitute a waiver of the mediation privilege. *See Cassel*, 51 Cal.4th at 119; Cal. Evid. Code § 1122(a)(1) & (2).  Therefore, Fireman's Fund cannot seek in its subpoena testimony from Mr. Konkel regarding the mediation between Goulds and Utica Mutual. *See Cassel*, 51 Cal.4th at 123; Cal. Evid. Code § 1119(a) & (b) (stating that statements or writings "made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation" are not admissible and *are not subject to discovery*).

## IV.   The Subpoena is Overbroad and, Consequently, Unduly Burdensome Because it Seeks Testimony, Without Limitation, Regarding the California and New York State Actions.

Federal Rule of Civil Procedure 26 requires courts to limit discovery when it can be obtained from "some other source that is more convenient, less burdensome, or less expensive" or when the burden of the discovery "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(i) & (iii).  When a party seeks to depose an attorney in particular, courts should consider "whether the proposed deposition would entail an inappropriate burden or hardship," including "the risk of encountering privilege and work-product issues." *Stern Kessler*, 276 F.R.D. at 382.

---

[3]   Nor the mediation privilege that applies with respect to Goulds and Fireman's Fund.

These factors weigh heavily in favor of this Court granting the motion to quash. First, the information that Fireman's Fund seeks can certainly be obtained from another source that is more convenient, less burdensome, and less expensive. Counsel for Fireman's Fund has stated that his reason for deposing Mr. Konkel is to establish the foundation to admit certain documents from the California mediation in the present case in the North District of New York. *See* Chefitz Decl., ¶ 8, Exh. 4 (Williams March 4, 2014 Email). Utica Mutual has agreed to consider that certain documents – most of which have not been disclosed to Mr. Konkel or his counsel – are admissible under Federal Rule of Evidence 803(6), an exception to the hearsay rule that permits the admission of records of regularly conducted business activity. *Id.*, ¶ 11. That stipulation between the actual parties in the reinsurance dispute would not need the involvement of Goulds or its lawyers whatsoever. This proposed stipulation, however, is apparently not good enough for Fireman's Fund, which seeks a stipulation from Utica Mutual that the documents are "authentic and admissible into evidence at trial (or for any other purpose) over any objection under Articles VIII, IX, and X of the Federal Rules of Evidence."[4] *See* Chefitz Decl., ¶ 9, Exh. 5, (March 4, 2014 Kitton Email and Attachment).

Second, deposing counsel for Goulds in a case between Utica Mutual and Fireman's Fund – when litigation that is the subject of the litigation is still ongoing between Goulds and its sole remaining non-settled insurer regarding related issues – imposes a severe burden on Goulds

---

[4] Regarding this far-reaching stipulation, counsel for Fireman's Fund stated that:

> "The issue is simple. We want to get certain materials that your firm wrote into evidence. I asked [counsel for Utica Mutual] to stipulate to admissibility. He said no, so we have to conduct depositions to lay the evidentiary basis. As I have told you, if you can agree with [counsel for Utica Mutual] to the admissibility short of a deposition, that is fine. That is up to you and [counsel for Utica Mutual]."

*See* Chefitz Decl., ¶ 8, Exh. 4 (Williams March 4, 2014 Email). Fireman's Fund's counsel, then, seems to think that Utica Mutual and Goulds should come to some sort of agreement in order to avoid Fireman's Fund's deposition of Gould's lawyer, Mr. Konkel.

and Mr. Konkel because the risk of encountering privilege and work product issues is great. The

subpoena on its face makes clear that the deposition will be fraught with privilege and work

product issues because Fireman's Fund intends to depose Mr. Konkel regarding both an ongoing

lawsuit and a previous companion lawsuit that contains three of the same parties as the current

case pending in the Northern District of New York. The risk is even greater given that Fireman's

Fund's counsel has employed a former paralegal who worked at Morgan Lewis and assisted Mr.

Konkel's representation of Goulds in the California and New York state cases.

## V.    In the Alternative, This Court Should Modify the Subpoena to Include Only Non-Privileged, Non-Protected Information Regarding the 1966 through 1973 Policy Years.

In the alternative, if this Court does not quash the subpoena in its entirety, it should

modify the subpoena to permit only deposition questioning that is not protected by the absolute

mediation privilege, the attorney-client privilege, or the work product protection *and* that relates

to the 1966 through 1973 policy years. As described above, Fireman's Fund itself in resisting

Utica Mutual's discovery into Fireman's Fund's actions in the *Cannon Electric* action, agreed to

limit its sole challenge to "the Settlement Agreement between Utica and Goulds . . .[to] the issue

of whether the Utica primary policies for the years 1966 through 1973 had aggregate product

limits." Dkt. No. 156, *Utica Mutual Ins. Co. v. Fireman's Fund Ins. Co.*, Case No. 6:09-cv-

00853-DNH-TWD (N.D.N.Y.) (noting that counsel for Fireman's Fund made representations to

the court that "all of [Fireman's Fund's] affirmative defenses" related to "the issue of whether

the Utica primary policies for the years 1966 through 1973 had aggregate product limits.").

Therefore, the only evidence relevant to Fireman's Fund's affirmative defenses – and the only

evidence it should be permitted to inquire into – are the Utica primary policies for the years 1966

through 1973, specifically whether those policies had aggregate product limits.[5]  This Court

should, if it does not quash the subpoena in its entirety, thus limit the deposition accordingly, or

more preferably, direct the parties to attempt to enter into a stipulation as to the foundation of

documents that are not otherwise subject to the absolute mediation privilege as qualifying as

business records admissible under Federal Rule of Evidence 803(6).

## VI.     The Law Firm of Williams Lopatto PLCC Must Be Disqualified From Representing Fireman's Fund In Connection With Any Discovery Directed At Goulds or Goulds' Counsel.

Ms. Hall billed at least 761 hours on the Goulds coverage litigation against Utica Mutual

and Fireman's Fund while at Morgan Lewis, working with Mr. Konkel and other attorneys on

the matter. *See* Chefitz Decl., ¶ 10.   Ms. Hall had access to privileged information and the

mental impressions and thoughts of Morgan Lewis attorneys including Mr. Konkel in connection

with Morgan Lewis's representation of Goulds in the litigation that is the subject of the

subpoena. *See* Chefitz Decl., ¶ 10.   Significantly, the law firm representing Fireman's Fund

consists of just five people, including Ms. Hall.  *See* http://www.williamslopatto.com/our-

team.html.   Mr. Williams confirmed that Ms. Hall indeed has been the paralegal for Fireman's

Fund on the Utica reinsurance litigation. *See* Chefitz Decl., ¶ 8, Exh. 4 (Williams March 4, 2014

Email).   The Williams Lopatto law firm has an ethical obligation to make reasonable efforts to

ensure that the conduct of the paralegals under its supervision and employ "is compatible with

the professional obligations of the lawyer" including the safeguarding of privileged information

of a former client. *See* D.C.Code Prof. Conduct Rule 5.3 cmt. 1.   The professional obligations of

a lawyer and essentially, by virtue of Rule 5.3, a paralegal include "not represent[ing] a client

with respect to a matter if . . . [r]epresentation of another client will be or is likely to be adversely

---

[5]     Of course, Mr. Konkel was not involved in Utica's issuance of the policies to Goulds in that period as, among other reasons, he was born in 1971.

affected by such representation." D.C. Code Prof. Conduct Rule 1.7(b)(3).  No later than the

moment that Mr. Williams and/or lawyers or personnel at his firm contemplated seeking to

depose a Morgan Lewis lawyer with respect to the Goulds litigation, a clear and serious conflict

arose.  If this Court does not quash the subpoena in its entirety, or if Fireman's Fund insists on

continuing to pursue discovery against Goulds and its lawyers about the Goulds coverage

litigation, Ms. Hall and her law firm must be disqualified from all such efforts to seek such

discovery. *See United States v. Phillip Morris, Inc.,* 312 F.Supp.2d 27, 44-45 (D.D.C. 2004)

(disqualifying an attorney and his firm in a tobacco litigation case from representing an

intervenor party against the government because he had previously spent 382 hours as a

government attorney on a "matter" which was substantially related to the issue he was handling

on the intervenor's behalf).

The Williams Lopatto law firm must also be disqualified.[6]  It made no efforts to follow

the provisions of District of Columbia Rule 1.11(c) and (d) once it decided to subpoena Goulds'

lawyer in that it failed to disqualify Ms. Hall, failed to notify Goulds and all affected parties of

Ms. Hall's disqualification, and failed to screen Ms. Hall off from any participation in the

currently pending matter against Goulds. *Id.* at 45.  Instead, when presented with the fact that a

clear conflict existed, the Williams Lopatto firm continued to insist that the deposition go

forward as scheduled without modification despite repeated invitations to take the deposition

"off calendar". *See* Chefitz Decl., ¶ 8, Exh. 4 (Williams March 4, 2014 Email).

## CONCLUSION

Pursuant to LCvR 7(m), prior to the filing of this motion, the undersigned met and

conferred in good faith through correspondence and by telephone with Fireman's Fund's counsel

---

[6]      Movant only seeks the disqualification of Ms. Hall and her law firm in connection with the subpoena at issue, and takes no position with respect to the instant reinsurance lawsuit, as that lawsuit does not involve Goulds.

John Williams to discuss this motion and to attempt to narrow the areas of disagreement. Fireman's Fund refused to take the deposition off calendar, agree to narrow the areas of examination, or otherwise meaningful attempt to reach a compromise necessitating this motion which Fireman's Fund apparently will oppose.

For all of the foregoing reasons, Non-Party Movant Gerald P. Konkel respectfully requests that this Court issue an order quashing Fireman's Fund's February 25, 2014 subpoena to Mr. Konkel and that the law firm Williams Lopatto PLLC be disqualified from representing Fireman's Fund in connection with any discovery directed at Goulds or its counsel with respect to the Goulds coverage litigation.

Dated: March 10, 2014                    Respectfully submitted,

                                         _____
                                         Daniel E. Chefitz (D.C. Bar No. 481420)
                                         Jessica M. Zetwick (D.C. Bar. No. 989187)
                                         Morgan, Lewis & Bockius LLP
                                         1111 Pennsylvania Avenue, N.W.
                                         Washington, D.C. 20004
                                         Telephone: (202) 739-5760
                                         Facsimile: (202) 739-3001
                                         Email: dchefitz@morganlewis.com
                                                jzetwick@morganlewis.com

                                         *Counsel for Non-Party Movant Gerald P. Konkel*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2014, the Memorandum in Support of

Motion to Quash the Subpoena to Gerald P. Konkel was filed with the Clerk of Court and a copy

was served by hand delivery, on:

John B. Williams, Esquire
Williams Lopatto PLLC
1776 K Street, NW, Suite 800
Washington, DC  20006
*Attorney for Fireman's Fund Insurance Company*

Syed S. Ahmad, Esquire
Hunton & Williams LLP
1751 Pinnacle Drive, Suite 1700
McLean, VA  22102
*Attorney for Utica Mutual Insurance Company*

_____
Jessica M. Zetwick, D.C. Bar No. 989187

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE NON-PARTY DEPOSITION SUBPOENA | ) ) ) ) | Civil Action No. _____ |
| GERALD P. KONKEL MORGAN, LEWIS & BOCKIUS LLP 1111 Pennsylvania Avenue, N.W. Washington, D.C. 20004 | ) ) ) ) ) | |
| Movant. | ) ) | |
| UTICA MUTUAL INSURANCE CO., 1800 Genesee Street New Hartford, New York 13413 | ) ) ) ) ) | |
| Plaintiff. v. | ) ) ) | Civil Action No. 6:09-cv-0853 (DNH/TWD) (N.D.N.Y.) |
| FIREMAN'S FUND INSURANCE CO., 777 San Marin Drive Novato, California 94945 | ) ) ) ) ) | |
| Defendant. | ) ) | |

## DECLARATION OF DANIEL E. CHEFITZ IN SUPPORT OF
## MOTION TO QUASH THE SUBPOENA TO GERALD P. KONKEL

I, DANIEL E. CHEFITZ, declare as follows:

1.      I am admitted to practice before this Court, and a partner in the law firm of Morgan, Lewis & Bockius, LLP ("Morgan Lewis"), counsel for Gerald P. Konkel.  I have personal knowledge of the matters set forth herein, and if called to testify as a witness, I could and would testify competently thereto.

2.      I submit this declaration in support of Mr. Konkel's Motion to Quash the Subpoena to Gerald P. Konkel.

3.      Attached as Exhibit 1 to this Declaration is a true and correct copy of the February 25, 2014 subpoena served on Mr. Konkel by Fireman's Fund Insurance Company ("Fireman's Fund").

4.      Attached as Exhibit 2 to this Declaration is a true and correct copy of the April 27, 2007 Los Angeles Superior Court Order regarding the settlement of certain litigation between Goulds Pump Inc. ("Goulds") and Utica Mutual Insurance Company ("Utica Mutual") in the cases styled *Cannon Electric Inc., et al. v. Affiliated FM Insurance, et al.*, No. BC 290354 (Sup Ct Cal.) and *Utica Mutual Insurance Company v. Goulds Pumps Inc., et al.*, No. 2003-002721 (Sup. Ct. N.Y.).

5.      In and in connection with the mediation, as well as the litigation, Goulds was represented by Morgan Lewis, including Mr. Konkel and Ms. Kelli Hall, a senior paralegal.

6.      In the course of meeting and conferring with counsel for Fireman's Fund regarding the subpoena issued to Mr. Konkel, I learned that Utica Mutual had apparently produced documents and communications exchanged during its confidential mediation with Goulds to Fireman's Fund in the instant action.  Neither Morgan Lewis nor Goulds has waived the mediation privilege or consented to the production of mediation documents by Utica Mutual or any other party or individual involved in the mediation.

7.      Attached as Exhibit 3 to this Declaration is a true and correct copy of the February 27, 2014 letter that I sent, on behalf of Mr. Konkel, to John B. Williams, counsel for Fireman's Fund and of the law firm Williams Lopatto PLLC, regarding the subpoena issued to Mr. Konkel.

8.      Attached as Exhibit 4 to this Declaration is a true and correct copy of the March 4, 2014 email Mr. Williams sent to me regarding the subpoena issued to Mr. Konkel.

2

9.     During discussions regarding the subpoena to Mr. Konkel, Mr. Williams sent me just two documents about which he said he intended to question Mr. Konkel at his deposition, though Mr. Williams indicated that he intended to question Mr. Konkel regarding many documents.  Attached as Exhibit 5 to this Declaration is a true and correct copy of the March 4, 2014 email Ms. Kitton of the Williams Lopatto law firm sent to me regarding a proposed Stipulation of Admissibility regarding those documents.

10.     Kelli Hall, a paralegal currently working for Williams Lopatto in the instant action, previously worked from July 2006 until March 2013 as a senior paralegal for Goulds and with Mr. Konkel at Morgan Lewis on the very same litigation and settlement that is the subject of the subpoena.  Based on my review of Morgan Lewis' records, I determined that Ms. Hall, while at Morgan Lewis, billed at least 761 hours to representing Goulds in the related litigation between Goulds and Utica Mutual and Goulds and Fireman's Fund.  During this time, Ms. Hall had access to the thoughts and mental impressions of Morgan Lewis attorneys in their representation of Goulds, as well as privileged information of Goulds regarding its litigation seeking coverage from its insurers.  Goulds has not waived this conflict of interest with respect to Ms. Hall.

11.     Utica Mutual has agreed to consider that certain documents – most of which have not been disclosed to Mr. Konkel or his counsel – are admissible under Federal Rule of Evidence 803(6).

12.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: March 10, 2014

Daniel E. Chefitz

# EXHIBIT 1

 **Williams Lopatto PLLC**

February 25, 2014

Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004

Attn:   Gerald P. Konkel

Re:     *Utica Mutual Insurance Company v. Fireman's Fund Insurance Company*
        Action Pending in the U.S. District Court, Northern District of New York
        No.:  6:09-cv-0853 (DNH/TWD)

Dear Mr. Konkel:

        We represent Defendant Fireman's Fund Insurance Company in connection with the above-referenced law suit commenced by Plaintiff Utica Mutual Insurance Company. Plaintiff's action is pending in the United States District Court for the Northern District of New York.

        Enclosed, please find a subpoena to testify at a deposition, which compels your appearance as well as certain documents as specified in the subpoena, subject to your rights and obligations under the Federal Rules of Civil Procedure and the subpoena.

        The deposition **shall be held at Williams Lopatto PLLC, located at 1776 K Street, NW, Suite 800, Washington, D.C. 20006 on March 12, 2014, at 10:00 a.m. Upon receipt of this letter, please contact John B. Williams at 202-296-1611 to discuss the subpoena** and, if necessary, to make any alternatively convenient arrangements.

Sincerely,

JOHN B. WILLIAMS

Enc.

AO 88A (Rev  12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

| | |
|---|---|
| Utica Mutual Insurance Company | ) |
| *Plaintiff* | ) |
| v. | ) |
| Fireman's Fund Insurance Company | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   6:09-cv-0853 (DNH/TWD)

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          Gerald P. Konkel

c/o Morgan Lewis & Bockius LLP, 1111 Pennsylvania Ave., NW, Washington, DC 20004

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

Cannon Electric Inc., et al. v. Affiliated FM Insurance, et al., No. BC 290354 (Sup. Ct. Cal.) and
Utica Mutual Insurance Company v. Goulds Pumps, Inc., et al., No. 2003-002721 (Sup. Ct. N.Y.)

| Place: Williams Lopatto PLLC, 1776 K Street, NW, Suite 800 Washington, DC 20006 | Date and Time: 03/12/2014 10:00 am |
|---|---|

The deposition will be recorded by this method:   Video and Stenographer

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See attached Appendix

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    02/25/2014

| | |
|---|---|
| *CLERK OF COURT* | |
| | OR |
| | |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Defendant
Fireman's Fund Insurance Company                      , who issues or requests this subpoena, are:

John B. Williams, Williams Lopatto PLLC, 1776 K Street, NW, Suite 800, Washington, DC 20006
jbwilliams@williamslopatto.com (202) 296-1665

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  6:09-cv-0853 (DNH/TWD)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

     I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

    ❐ I returned the subpoena unexecuted because: _____

_____ .

    Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

    $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

    I declare under penalty of perjury that this information is true.

Date: _____

                         _____
                                     *Server's signature*

                         _____
                                     *Printed name and title*

                         _____
                                     *Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person, and
  **(B)** inspection of premises at the premises to be inspected

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  **(A)** *When Required* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies, or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information, or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship, and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information.
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms
  **(C)** *Electronically Stored Information Produced in Only One Form* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim
  **(B)** *Information Produced* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed R Civ P. 45(a) Committee Note (2013)

**Appendix**

**DEFINITIONS**

1.   **"You"** and **"your"** shall mean Morgan Lewis & Bockius LLP ("Morgan Lewis").

2.   **"Document"** includes all types of documents referred to in Rule 34(a) of the Federal Rule of Civil Procedure and, without limiting the foregoing, includes all written or printed material as well as tape or other audio recordings, electronic messages ("email") and other information maintained electronically in databases or stored on computers (such as computer tapes, disks or other computer, storage media). The term **"document"** includes all attachments, appendices and exhibits, and the original, drafts and all non-identical copies and translations of any document. **"Document"** as used herein also includes each and every file folder in which the above items are stored or filed.

3.   **"Each"** and **"any"** include both **"each"** and **"every."**

4.   **"Relate to"** or **"relating to"** means containing, constituting, considering, comprising, concerning, describing, discussing, evidencing, furthering, regarding, reflecting, showing, stating, studying, commenting or reporting on, mentioning, analyzing, or referring, alluding, or pertaining to, directly or indirectly, in whole or in part.

5.   The term **"or"** shall mean **"and"** and vice versa, as necessary to bring within the scope of the following requests all information that would be excluded absent this definition.

**INSTRUCTIONS**

1.       The use of the singular form of any word includes the plural and vice versa. The connectives "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the request all documents that might otherwise be construed as outside the scope of the request. The terms "all" and "each" shall be construed as all and each.

2.     The use of any tense of any verb shall be considered also to include within its meaning all other tenses of the verb as necessary to bring within the request all documents that might otherwise be construed as outside the scope.

3.     Each request to produce a document or documents shall be deemed to call for the production of the original document(s) to the extent that they are in, or subject to, directly or indirectly, the possession, custody or control of Morgan Lewis. As set forth in the Definitions, each request also calls for, in addition to the originals of all requested documents, all copies thereof which are the same or which are different in any way from the original (including by underlining, notations, location or otherwise) and both sides thereof where applicable.

4.     When a request calls for the production of any document, it shall be deemed to include a request for the production of all attachments and enclosures thereto.

5.     You are requested to produce each and every document in your possession, custody or control which is responsive to any request. The documents requested herein shall include every document known to Morgan Lewis and every document that can be located or discovered by reasonably diligent efforts.

6.     If you object to any request, kindly do so as specifically as possible, and comply with each request insofar as it is not objectionable.

7.     Each document withheld from production based upon privilege or any similar claim shall be identified by: (a) the type of document; (b) the general subject matter of the document; (c) the date of the document; and (d) such other information as is sufficient to identify the document, including, without limitation, the author of the document, the relationship of the author and any recipient to each other. The nature of each claim of privilege shall be set forth in

sufficient detail to enable a determination to be made concerning the reasons for the privilege claim.

8.     If a document which you contend is privileged or otherwise protected from disclosure can be rendered non-objectionable through redaction, you are requested to produce the document in that form, identifying the redactions, and providing an explanation for them.

9.     If, to your knowledge, any otherwise responsive documents have been, but are no longer, in Morgan Lewis' possession, custody or control, state: (i) the date, type, and number of pages of the documents; (ii) the information contained therein; (iii) the author(s); (iv) the addressee(s); (v) the identities of any attachments or appendices to the documents; (vi) all persons having knowledge of the documents' contents; (vii) the date and manner of any destruction or discard; and (viii) the person(s) authorizing and carrying out such destruction or discard.

10.     In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, accountants or investigators, or by your attorney or their agents, employees, representatives or investigators.

11.     Documents shall be produced as they are kept in the regular course of business, or, in the alternative, organized and labeled so as to correspond to the categories in this request in accordance with Rule 34(b) of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.  All documents, including electronically stored information (e.g., emails), correspondence, and drafts of all documents, exchanged between Utica Mutual Insurance Company and Goulds Pumps, Inc. relating to the settlement(s) in the following actions: *Cannon Electric Inc., et al. v. Affiliated FM Insurance, et al.,* No. BC 290354 (Sup. Ct. Cal.) and *Utica Mutual  Insurance Company v. Goulds Pumps, Inc., et al.,* No. 2003-002721 (Sup. Ct. N.Y.).

# EXHIBIT 2

1  JOSEPH K. HEGEDUS (State Bar No. 93858)
   VICTOR W. SANTOCHI (State Bar No. 80629)
2  LEWIS BRISBOIS BISGAARD & SMITH LLP
   221 North Figueroa Street, Suite 1200
3  Los Angeles, California 90012
   Telephone:  213-250-1800
4  Facsimile:  213-250-7900

5  WILIAM M. SAVINO
   STEPHEN J. SMIRTI, JR.
6  RIVKIN RADLER LLP
   926 Reckson Plaza
7  Uniondale, NY 11556-0926
   Telephone: 516-357-3000
8  Facsimile: 516-357-3333

**ORIGINAL FILED**

APR 2 7 2007

**LOS ANGELES
SUPERIOR COURT**

EXHIBIT
Matt~
20
2-4-11  RNP

9
10              SUPERIOR COURT OF THE STATE OF CALIFORNIA
                              FOR THE
11                     COUNTY OF LOS ANGELES

12  CANNON ELECTRIC, INC., *et al.*,          ) No.  BC 290354
                                              )
13                         Plaintiffs,        )
                                              )
14              *v.*                           )
                                              )
15  AFFILIATED FM INSURANCE COMPANY,          )
    *et al.*,                                  )
16                         Defendants;        )
                                              )
17  _____       )
                  and                         )
18                                            ) Judge:  Honorable Peter D. Lichtman
    RELATED CROSS-COMPLAINTS; AND:            ) Department:  322
19                                            ) Complaint Filed:  February 13, 2003
    _____       )
20
21              SUPREME COURT OF THE STATE OF NEW YORK
                              FOR THE
22                     COUNTY OF ONEIDA

23  UTICA MUTUAL INSURANCE COMPANY,           ) No. CA2003-002721
                                              )
24                         Plaintiff,         )
                                              )
25              *v.*                           )
                                              )
26  GOULDS PUMPS, INC.,                       )
                                              )
27                         Defendant.         ) Justice:  Honorable Robert F. Julian
    _____       ) Complaint Filed:  October 31, 2003
28

4849-0974-8225.1
                    STIPULATION AND ORDER UNDER
    CAL. CIV. PROC. CODE SECTION 664 6 AND N.Y. CIV. PRAC. L. & R. 3217 AND 3222   04-27-07F

| | |
|---|---|
| 1 | **STIPULATION AND ORDER UNDER** |
| 2 | **SECTION 664.6 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE AND RULES 3217 AND 3222 OF THE NEW YORK CIVIL PRACTICE LAW AND RULES** |

3         Pursuant to section 664.6 of the California Code of Civil Procedure in the Los Angeles Action

4 (as defined below) and Rules 3217 and 3222 of the New York Civil Practice Law and Rules in the New

5 York Action (as defined below), plaintiff, cross-defendant, and defendant Goulds Pumps, Inc. together

6 with plaintiff and cross-defendant ITT Corporation, and defendant, cross-defendant, and plaintiff Utica

7 Mutual Insurance Company in the two captioned actions, by their attorneys, hereby stipulate; and the

8 Honorable Peter D. Lichtman, Judge of the Superior Court of the State of California for the County of

9 Los Angeles and the Honorable Robert F. Julian, Justice of the Supreme Court of the State of New York

10 for the County of Oneida, pursuant to California law and New York law, respectively, hereby find and

11 order the following:

12      1.      On February 13, 2003, Goulds Pumps, Inc., ITT Corporation (the ultimate corporate

13 parent of Goulds Pumps, Inc.), and certain corporate affiliates of one or both (hereinafter collectively

14 referenced as "Goulds"), and other plaintiffs, filed the captioned action against Utica Mutual Insurance

15 Company (hereinafter, "Utica Mutual") and numerous other insurers as defendants in the Superior Court

16 of the State of California for the County of Los Angeles (hereinafter, "Los Angeles Action").

17      2.      On October 31, 2003, Utica Mutual as plaintiff commenced another action against Goulds

18 Pumps, Inc. as defendant in the Supreme Court of the State of New York for the County of Oneida,

19 which action is captioned *Utica Mut. Ins. Co. v. Goulds Pumps, Inc.*, No. CA2003-002721 (N.Y.

20 Oneida Co. filed Oct. 31, 2003) (hereinafter, "New York Action").

21      3.      In 2004, Utica Mutual and Goulds (hereinafter together referenced as "Parties")

22 requested Judge Lichtman and Justice Julian jointly to act as settlement judges between Utica Mutual

23 and Goulds and to mediate the Parties' settlement discussions to settle their disputes. The mediation

24 process and settlement discussions, which lasted for more than a year, successfully culminated in a

25 settlement between the Parties on or about February 20, 2007.

26      4.      Following written submissions by the parties, on numerous other occasions by telephone

27 conferences and personal meetings, Judge Lichtman and Justice Julian met and conferred with the

28 Parties' executives and attorneys who were designated as the Parties' representatives for purposes of

1  mediation and settlement.

2      5.    The Los Angeles Action and the New York Action raised extremely complex issues of

3  insurance coverage, including without limitation the respective rights, duties, and obligations of Utica

4  Mutual as insurer and Goulds as insured relating to defense and indemnity with respect to Utica Mutual's

5  payment of losses, defense costs, and other loss adjustment expenses under numerous insurance policies

6  issued by Utica Mutual and naming Goulds as an insured for various periods during calendar years from

7  1955 through 1986, including

8          a.    Exhaustion of the limits of Utica Mutual's insurance policies issued to Goulds;

9          b.    Available limits, deductibles and self-insured retentions, exclusions, and other

10  terms, conditions, and other provisions of insurance policies issued by Utica Mutual to Goulds;

11          c.    Choice of law;

12          d.    Utica Mutual's share of losses, defense costs, and other loss adjustment expenses

13  incurred or paid with respect to lawsuits, demands, and other claims against Goulds, including

14  losses, defense costs, and other loss adjustment expenses with respect to those lawsuits,

15  demands, and other claims against Goulds pending at the time the Parties entered into the

16  settlement;

17          e.    Application of Utica Mutual's payments to or on behalf of Goulds to per-

18  occurrence and aggregate limits of liability in Utica Mutual's insurance policies;

19          f.    Protocols for handling claims against Goulds; and

20          g.    Contribution, subrogation, and indemnity.

21      6.    Utica Mutual and Goulds were represented by their respective executives and attorneys

22  who are competent, knowledgeable, and experienced in the subject matter of the two actions, the

23  insurance policies at issue in the actions, and the issues raised, including insurance claims and coverage

24  relating to allegations of bodily injury, property damage, products liability, occupational disease,

25  completed operations hazard liability arising from products containing asbestos, and primary and

26  umbrella insurance policies.

27      7.    In and during the mediation, the Parties' respective positions were ably, vigorously, and

28  comprehensively negotiated, including over all the issues described in paragraph 5 above.

8.  The Parties' settlement, as set forth in the Defense and Indemnify Agreement Among Goulds Pumps, Inc., ITT Corporation and Utica Mutual Insurance Company and related settlement documents signed on or about February 20, 2007 (hereinafter referenced as "Settlement Agreements"), including resolution of (a) the issues described in paragraph 5 above and (b) the allocation methodology for indemnity costs and defenses costs as described in the settlement documents, is fair, just, and reasonable; was resolved within the terms of the primary and umbrella insurance policies issued by Utica Mutual to Goulds; and was otherwise entered at arm's length and in good faith by the Parties.

9.  Except as set forth in the Settlement Agreements, rule 3.854 (relating to "Confidentiality") of the California Rules of Court and other law governing confidentiality of mediation and settlement negotiations shall not apply to this Stipulation and Order and the Parties' consent thereto, but such law shall remain applicable to all other statements, negotiations, and documents relating to mediation or settlement as set forth in rule 3.854 and other applicable law.

10.  Any and all claims pending in the Los Angeles Action by plaintiffs and cross-defendants Goulds Pumps, Inc. and ITT Corporation, and by defendant and cross-complainant Utica Mutual Insurance Company, against the other shall be and are hereby dismissed with prejudice, pursuant to section 581 of the California Code of Civil Procedure and subject to section 664.6 of the California Code of Civil Procedure. Said court, and specifically Judge Lichtman (and his successor, if any) of said court, hereby retains jurisdiction under section 664.6 of the California Code of Civil Procedure over this matter and the Parties until performance in full of the terms of the Settlement Agreements.

11.  Any and all claims pending in the New York Action by plaintiff, Utica Mutual Insurance Company, and by defendant, Goulds Pumps, Inc., against the other shall be and are hereby dismissed with prejudice under Rule 3217 of the New York Civil Practice Law and Rules, subject to Rule 3222 of the New York Civil Practice Law and Rules. Said court, and specifically Justice Julian (and his successor, if any) of said court, hereby retains jurisdiction under Rule 3222 over any controversy between the Parties relating to this matter and the Parties until performance in full of the terms of the Settlement Agreements.

12.  In accordance with the Settlement Agreements between the Parties and in accord with section 664.6 of the California Code of Civil Procedure, (1) Judge Lichtman and Justice Julian in their

4849-0974-8225.1

4

1 | respective capacities as sitting judges who each retain concurrent jurisdiction over the judicially

2 | supervised settlement agreement shall jointly hear and determine any and all dispute(s) between the

3 | Parties concerning the meaning, interpretation, or application of the Settlement Agreements; and (2) the

4 | decisions of Judge Lichtman and Justice Julian shall be final and binding on the Parties and shall not be

5 | subject to appeal.

6

7 | IT IS HEREBY SO STIPULATED BY:

8

9 | JOSEPH K. HEGEDUS                 PAUL A. ZEVNIK
   | VICTOR W. SANTOCHI               MICHEL Y. HORTON

10 | LEWIS BRISBOIS BISGAARD & SMITH LLP   GERALD P. KONKEL
   |                                 MORGAN, LEWIS & BOCKIUS LLP

11

12 | By _____            By _____
   |    JOSEPH K. HEGDUS              MICHEL Y. HORTON

13

   | Attorneys for UTICA MUTUAL INSURANCE   Attorneys for GOULDS PUMPS, INC. and
14 | COMPANY                         ITT CORPORATION

15 | Dated: April 26, 2007           Dated: April 26, 2007

16

17

18 | IT IS HEREBY SO ORDERED BY:

19

20 | _____              _____
   |    PETER D. LICHTMAN             ROBERT F. JULIAN
21 |    Judge of the Superior Court      Justice of the Supreme Court

22 | Dated: April 27, 2007          Dated: April ___, 2007

23

24

25

26

27

28

4849-0974-8225.1

STIPULATION AND ORDER UNDER
CAL. CIV. PROC. CODE SECTION 664.6 AND N.Y. CIV. PRAC. L. & R. 3217 AND 3222

# EXHIBIT 3

Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202.739.3000
Fax: 202.739.3001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Daniel E. Chefitz**
202.739.5760
dchefitz@morganlewis.com

February 27, 2014

**VIA E-MAIL**
John B. Williams
Williams Lopatto PLLC
1776 K Street, NW
Suite 800
Washington, D.C. 20006

Re:   *Utica Mutual Insurance Company v. Fireman's Fund Insurance Company*: Subpoena
      against Gerald P. Konkel c/o Morgan Lewis & Bockius LLP.

Dear Mr. Williams:

I represent Gerald P. Konkel in connection with the above referenced subpoena served yesterday.
I am writing to follow up on our discussions yesterday, and to request that the subpoena be
immediately withdrawn.

As I mentioned to you, all information sought by the subpoena (both testimony and documents)
is protected by a mediation privilege in addition to the attorney-client privilege and the attorney
work product doctrine. Mr. Konkel and our law firm are counsel for Goulds Pumps in ongoing
insurance coverage litigation in California. That litigation remains active. Given the privileged
and protected nature of the information Fireman's Fund seeks, the status of the Goulds litigation
and the interrelation of issues between the remaining defendant and the settled defendants it is
entirely improper to seek testimony concerning that matter from one of the trial counsel,
particularly given the circumstances we discussed yesterday.

You represented that you only sought Mr. Konkel's testimony regarding the mediated settlement
with Utica Mutual, notwithstanding the very broadly worded topics in the subpoena. However,
narrowing the topic to Goulds Pumps' mediation with Utica Mutual does not resolve our
privilege concerns as all information related to the mediated settlement is protected from
disclosure by an absolute mediation privilege that cannot be waived by any one party or counsel.

The settlement between Utica Mutual and Goulds Pumps was negotiated as part of a mediation
in the California coverage action. In fact, one of the mediators was the judge in the California

**Morgan Lewis**
COUNSELORS AT LAW

John B. Williams
February 27, 2014
Page 2

action. A recent California Supreme Court decision has reinforced the strict mediation privilege applicable to mediations conducted in connection with California actions. "We have repeatedly said that these confidentiality provisions are *clear and absolute*." *Cassel v. Superior Court,* 51 Cal.4th 113, 117, 244 P.3d 108, 1083, 119 Cal.Rptr.3d 437, 440 (Cal. 2011). (emphasis added) The *Cassel* court held that the privilege is held by the parties to the mediation **and** the attorneys and that not only is discovery "out of bounds" with respect to communications for the purpose of, in the course of, or pursuant to mediation between parties and their lawyers in the mediation, but the privilege is so broad that even a client-party that sues its attorney alleging legal malpractice by that attorney in the course of mediation cannot compel discovery from that attorney or otherwise about the mediation. *Id.* at 123 (agreeing with attorneys' argument that "mediation-related discussions with [attorney's client] are inadmissible in [the attorney's client's] malpractice action against them, even if those discussions occurred in private, away from any other mediation participant.")

The mediation privilege cannot be waived by a single party and cannot be waived without the attorneys-to-that-mediation's waiver:

> "[U]nless the confidentiality of a particular communication is expressly waived, under statutory procedures, by *all* mediation "*participants,*" or at least by all those "participants" by or for whom it was prepared (§ 1122, subd. (a)(1), (2)), things said or written "for the purpose of" and "pursuant to" a mediation shall be inadmissible in "any . . . civil action." (§ 1119, subds. (a), (b).)"

*Cassel v. Superior Court,* 51 Cal.4th at 119 (emphasis added); *see also* Cal. Evid. Code § 1122(a)(1) & (2). The term "participant" "includes more than the mediation parties or disputants" it includes the attorneys that participated in the mediation *Id.* at 130.

"As the statutes make clear, confidentiality, unless so waived, extends beyond utterances or writings "in the course of" a mediation (*ibid.*), and thus is not confined to communications that occur *between mediation disputants* during the mediation proceeding itself." *Id.* at 119. "[A]ll discussions conducted in preparation for a mediation, as well as all mediation-related communications that take place during the mediation itself, are protected from disclosure." *Id.* at 128.

"The broad policy of mediation confidentiality contained in the statutes is strictly enforced and the California Supreme Court has refused to allow implied exceptions: "Where no express waiver of confidentiality exists, judicially crafted exceptions to mediation confidentiality are not appropriate." *Benesch v. Green,* 2009 WL 4885215 (N.D.Cal. Dec. 17, 2009).

Neither Mr. Konkel nor Goulds Pumps have waived the mediation privilege protections with respect to either Goulds Pumps' mediation with Utica Mutual or Goulds Pumps' mediation with Fireman's Fund, which concerned similar claims and disputes. Please promptly advise if your



**Morgan Lewis**
COUNSELORS AT LAW

John B. Williams
February 27, 2014
Page 3

client, Fireman's Fund, believes that the absolute mediation privilege protection no longer
applies to the Fireman's Fund mediation.

While we recognize that the above mediation privilege is based on a state statute, New York
federal courts "as a matter of comity" have accorded deference to similar state-created mediation
privileges. *See Lolonga-Gedeon v. Child & Family Services,* 2012 WL 1714914 (W.D.N.Y.
May 15, 2012) (citations omitted) (holding that mediation materials that were confidential under
N.Y. Judiciary Law § 849-b [6] were not discoverable).

All documents and testimony sought by your subpoena involve matters that fall within the
mediation privilege afforded by the court that oversaw the mediation. On that ground alone we
object to the subpoena and request that it be withdrawn. In addition, we also object because the
subpoena is terribly overbroad and seeks information that is clearly protected by the work
product doctrine and attorney-client privilege.

We reiterate our willingness to attempt to work with you in connection with the authenticity of
certain documents, which you stated you would forward to me promptly, but which I am yet to
receive, to the extent those documents are not protected by any of the privileges discussed in this
letter. Please let me know by the close of business tomorrow whether the subpoena is
withdrawn. If you refuse to withdraw the subpoena, we will have no choice but to file a motion
to quash and to seek other relief, including, without limitation, the other relief we discussed
about the impropriety of this deposition. Mr. Konkel reserves all rights in law and equity.

Sincerely,

Daniel E. Chefitz

cc:    Syed S. Ahmad

# EXHIBIT 4

| | |
|---|---|
| **From:** | John B. Williams [jbwilliams@WilliamsLopatto.onmicrosoft.com] |
| **Sent:** | Tuesday, March 04, 2014 12:30 PM |
| **To:** | Chefitz, Daniel E. |
| **Cc:** | Mary A. Lopatto; Fara N. Kitton |
| **Subject:** | RE: Konkel Deposition |

Daniel---I tried calling, but had to leave for the airport.

Let me respond to your emails of today.

1. I have drafted a proposed stipulation, which Fara Kitton will send over later to you and to Syed. If it is acceptable to you guys, we will get it signed and release the witness.

2. If it is not acceptable, we will go forward with the deposition next week. Your call.

3. You say that you will seek relief if we do not withdraw the subpoena, which we are not doing at this point. If you move to disqualify us, we will also wish to depose Zevnik. We can do that either next Wednesday or Friday. Syed is free both days.

4. You asked me to forward the documents that I would like to get admitted. I am still considering which ones. We will send them over as long as you will confirm first that you understand the list is not exhaustive and also that you understand that I may not want to use some of them. Sorry to do this---but I wanted to avoid any misunderstandings--or unnecessary concerns. You can shoot that confirmation to Fara, and she will send you the documents.

**From:** Chefitz, Daniel E. [mailto:dchefitz@morganlewis.com]
**Sent:** Tuesday, March 04, 2014 11:04 AM
**To:** John B. Williams
**Cc:** Mary A. Lopatto
**Subject:** RE: Konkel Deposition

Also, do you have a draft admissibility stipulation that Fireman's Fund is looking to have signed? That would certainly help responding to your request.

**Daniel E. Chefitz**
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: 202.739.5760 | Main: 202.739.3000 | Fax: 202.739.3001
dchefitz@morganlewis.com | www.morganlewis.com
Assistant: Linda J. Ramsburg | 202.739.5241 | lramsburg@morganlewis.com

**From:** Chefitz, Daniel E.
**Sent:** Tuesday, March 04, 2014 10:49 AM
**To:** 'John B. Williams'
**Cc:** Mary A. Lopatto
**Subject:** RE: Konkel Deposition

John,

1

Please immediately confirm that you have taken the deposition off calendar – it is overbroad and improper particularly under the circumstances – and please immediately forward all the "certain material" written by our firm that are at issue.

Otherwise, we will be forced to seek the relief that I have outlined in my prior correspondence and e-mails.

Regards,

Daniel
**Daniel E. Chefitz**
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: 202.739.5760 | Main: 202.739.3000 | Fax: 202.739.3001
dchefitz@morganlewis.com | www.morganlewis.com
Assistant: Linda J. Ramsburg | 202.739.5241 | lramsburg@morganlewis.com

**From:** John B. Williams [mailto:jbwilliams@WilliamsLopatto.onmicrosoft.com]
**Sent:** Tuesday, March 04, 2014 7:58 AM
**To:** Chefitz, Daniel E.
**Cc:** Mary A. Lopatto
**Subject:** RE: Konkel Deposition

Daniel, let me try this again

1. I am happy to try to reach a resolution of this matter. The issue is simple. We want to get certain materials that your firm wrote into evidence. I asked Syed to stipulate to admissibility. He said no, so we have to conduct depositions to lay the evidentiary basis. As I have told you, if you can agree with Syed to the admissibility short of a deposition, that is fine. That is up to you and Syed.

2. Your continued threats to move for our disqualification do not sound like an attempt to resolve this issue. By assuring Kelli that Morgan Lewis would not assert any conflict, your firm already waived any conflict. If you persist with these threats, we will have no choice but to depose Konkel and probably Zevnik.

3. On the "narrowing" of the subpoena, I am not sure what your concern is. If you think my questions are objectionable, just object at the deposition.

I am here today until noon if you want to try to work this out. Then gone until Thursday

**From:** Chefitz, Daniel E. [mailto:dchefitz@morganlewis.com]
**Sent:** Monday, March 03, 2014 10:14 PM
**To:** John B. Williams
**Subject:** RE: Konkel Deposition

John:

1. Your email from earlier today attached an email trying to implement a mediated settlement with the following message: "Hi---here is one of the documents I will show the witness next week." That does not sound like an attempt to implement an agreed plan to try to resolve an issue you may have regarding the document short of a deposition. Typically, when one tries in good faith to resolve issues to avoid a deposition they either withdraw the subpoena or at least take the deposition off calendar.

2. Your firm, first Cozen O'Connor before it withdrew from representing Fireman's Fund in this matter last month because of a conflict, and now the Williams Lopatto LLP firm, hired a paralegal who worked for Goulds in a suit against Fireman's Fund (and against Utica Mutual) for 7 years and who had access to the thoughts, mental impressions, and

2

privileged matter of Goulds in seeking coverage against its insurers. Your firm has made this paralegal a key member of the trial "team" which is trying to compel the testimony of a lawyer of Goulds. The only subject of the testimony you seek concerns the representation of Goulds against its insurers, including Fireman's Fund. It is a prohibited effort to obtain the work product of Mr. Konkel, and the work product and – as your subpoena has not been amended – the mediation privileged protected matter of Goulds. Goulds has the privilege and it is not waiving the privilege as to Konkel's testimony *or* as to Kelli Hall.

3. I raised a number of issues regarding the subpoena in my letter. Since then you have made no attempt to narrow the scope of the overbroad and privilege seeking subpoena to a much smaller category of documents and testimony that you contend is reasonable and not the subject of any privilege. If you plan to do so before we file our motion to quash, I suggest you do so immediately, or take the deposition off calendar to provide a meaningful period for the parties to meet and confer.

4. The email attached to your email contains statements made by my client in the implementation of a mediated settlement as part of a litigation that remains pending. Most, if not all, questions regarding that email – and any of the documents that you have suggested would be the subject of an examination -- including the preparation of such documents and the intended meaning of them would involve my client's and his colleagues mental impressions at the time of his representation of Goulds in "live" litigation with Goulds' other insurers, including Fireman's Fund, and those impressions are certainly privileged, just as are the mental impressions that Ms. Hall certainly maintains regarding the case she litigated for her client Goulds.

Regards,

Daniel

**Daniel E. Chefitz**
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: 202.739.5760 | Main: 202.739.3000 | Fax: 202.739.3001
dchefitz@morganlewis.com | www.morganlewis.com
Assistant: Linda J. Ramsburg | 202.739.5241 | lramsburg@morganlewis.com

**From:** John B. Williams [mailto:jbwilliams@WilliamsLopatto.onmicrosoft.com]
**Sent:** Monday, March 03, 2014 5:36 PM
**To:** Chefitz, Daniel E.
**Cc:** Mary A. Lopatto
**Subject:** RE: Konkel Deposition

Look, Daniel---let's set the record straight

1. When I said that I would likely not take the deposition I did not know that Paul Zevnik of your firm, as well as Jay Konkel, had agreed that Kelli Hall could work for Mary Lopatto. Kelli specifically discussed with both of these individuals that she would be working on the FFIC-Utica case---and they assured her that this would not be a conflict. These men are experienced insurance lawyers, and they clearly knew that Mary's case involved a challenge to the settlement agreement that they themselves negotiated. When Kelli informed me of her assurances from Zevnik and Konkel, I immediately called you back to inform you of that fact. Your letter did not raise that issue, and I had assumed the matter was dropped. Apparently not. If you wish to press your disqualification issue, the topics for next week's deposition will include Mr. Konkel's assurances to Ms. Hall.

2. As an aside, it is poor form, to say the least, to assure a paralegal that you would not raise a conflict and then to turn around and do just that. Kelli further informs me that she specifically told Zevnik that she could not risk losing her new job due to a conflict that could be asserted. Do you really want to present these facts to the court?

3. Your disqualification threat is also surprising in view of what I thought was our agreed plan to try to resolve this issue short of a deposition. You asked to receive the materials I wanted to get into evidence. I sent you what I have found so far. I thought your next step was to see if you could agree with Syed Ahmad that the documents were authentic and admissible.

4. As for the "mediation privilege," the mediation did not commence until 2005 and was terminated by the settlement agreement in February, 2007. The documents I sent you pre and post date the existence of any "privilege."

5. As for "work product," I am confused. I have never heard of an argument that correspondence sent to or statements made to opposing counsel is protected "work product."

So from this it should be apparent that the subpoena is not withdrawn. I remain willing to work things out with you to spare the need for a deposition, and hope we can do so cooperatively.

**From:** Chefitz, Daniel E. [mailto:dchefitz@morganlewis.com]
**Sent:** Monday, March 03, 2014 4:45 PM
**To:** John B. Williams
**Subject:** RE: Konkel Deposition

John:

For the reasons set forth in my February 27, 2014 letter (a copy of which is attached again) requesting that the overly-broad-and-directed-to-protected-information subpoena be withdrawn, the testimony you seek regarding this email is problematic. In addition to the fact that this email was implementing a mediated settlement, and therefore is subject to the absolute mediation privilege, any questioning into the subject of this email would seek Mr. Konkel's mental impressions in connection with litigation in which Goulds was engaged with its insurers (including Fireman's Fund before Goulds and Fireman's Fund settled their disputes through mediation), litigation that remains ongoing, and thus would be protected attorney work product. Furthermore, as previously discussed, your firm is conflicted from questioning Mr. Konkel on the subject matter of this or similar emails as Kelli Hall worked with Mr. Konkel as the senior paralegal on this matter including but not limited to when the email was written. Last Thursday, you confirmed that Ms. Hall has been a member of your "team" on this matter and you initially indicated that as a result of this conflict your firm would not depose Mr. Konkel. Neither your firm, nor any other attorney that you could attempt to prepare to take the deposition could indeed take the deposition. If you do not confirm, immediately, in writing that the subpoena is withdrawn, we will move by or before the end of this week to quash the subpoena in its entirety and to disqualify your law firm.

Regards,

Daniel

**Daniel E. Chefitz**
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: 202.739.5760 | Main: 202.739.3000 | Fax: 202.739.3001
dchefitz@morganlewis.com | www.morganlewis.com
Assistant: Linda J. Ramsburg | 202.739.5241 | lramsburg@morganlewis.com

**From:** John B. Williams [mailto:jbwilliams@WilliamsLopatto.onmicrosoft.com]
**Sent:** Monday, March 03, 2014 2:12 PM
**To:** Chefitz, Daniel E.
**Subject:** Konkel Deposition

Hi---here is one of the documents I will show the witness next week.

Regards,

DISCLAIMER
This e-mail message is intended only for the personal use
of the recipient(s) named above. This message may be an
attorney-client communication and as such privileged and
confidential and/or it may include attorney work product.
If you are not an intended recipient, you may not review,
copy or distribute this message. If you have received this
communication in error, please notify us immediately by
e-mail and delete the original message.

DISCLAIMER
This e-mail message is intended only for the personal use
of the recipient(s) named above. This message may be an
attorney-client communication and as such privileged and
confidential and/or it may include attorney work product.
If you are not an intended recipient, you may not review,
copy or distribute this message. If you have received this
communication in error, please notify us immediately by
e-mail and delete the original message.

DISCLAIMER
This e-mail message is intended only for the personal use
of the recipient(s) named above. This message may be an
attorney-client communication and as such privileged and
confidential and/or it may include attorney work product.
If you are not an intended recipient, you may not review,
copy or distribute this message. If you have received this
communication in error, please notify us immediately by
e-mail and delete the original message.

# EXHIBIT 5

**From:**        Fara N. Kitton [fnkitton@WilliamsLopatto.onmicrosoft.com]
**Sent:**        Tuesday, March 04, 2014 12:55 PM
**To:**          Chefitz, Daniel E.; Ahmad, Syed S.
**Cc:**          John B. Williams; Mary A. Lopatto
**Subject:**     Proposed Stipulation of Admissibility
**Attachments:** Draft Stipulation of Admissibility.docx

Counsel:

Attached for your review is a proposed Stipulation of Admissibility with respect to certain Morgan Lewis documents. Please let us know if this stipulation is acceptable to you.

Best regards,

Fara N. Kitton
Williams Lopatto PLLC
1776 K Street, NW, Suite 800 | Washington, DC 20006 | (202) 296-1733
fnkitton@williamslopatto.com | www.williamslopatto.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UTICA MUTUAL INSURANCE COMPANY,          No.: 6:09-CV-0853 (DNH/TWD)

                Plaintiff,


              -against-


FIREMAN'S FUND INSURANCE COMPANY,

                Defendant.

-------------------------------------------------------------x

### STIPULATION OF ADMISSIBILITY

It is hereby stipulated and agreed, by and between the undersigned, that each of the exhibits attached hereto are authentic and admissible into evidence at trial (or for any other purpose) over any objection under Articles VIII, IX, and X of the Federal Rules of Evidence.


Dated: March __, 2014


WILLIAMS LOPATTO PLLC                    HUNTON & WILLIAMS LLP

By: _____              By: _____
John B. Williams, Esq. (106118)          Syed S. Ahmad (admitted *pro hac vice*)
1776 K Street, N.W., Suite 800           1751 Pinnacle Drive, Suite 1700
Washington, D.C. 20006                   McLean, Virginia 22102
Tel.: (202) 296-1611                     Tel: (703) 714-7400
jbwilliams@williamslopatto.com           sahmad@hunton.com

*Attorneys for Defendant*                *Attorneys for Plaintiff*
*Fireman's Fund Insurance Company*       *Utica Mutual Insurance Company*